IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PUENTE, et al., *Plaintiffs/Appellants,*

*v.*

ARIZONA STATE LEGISLATURE, *Defendant/Appellee.*

No. 1 CA-CV 20-0710
FILED 2-15-2022

Appeal from the Superior Court in Maricopa County
No.   CV 2019-014945
The Honorable Joseph P. Mikitish, Judge

**VACATED AND REMANDED**

COUNSEL

The People's Law Firm, Phoenix
By Stephen D. Benedetto, Heather A. Hamel
*Counsel for Plaintiffs/Appellants*

Statecraft PLLC, Phoenix
By Kory A. Langhofer, Thomas J. Basile
*Counsel for Defendant/Appellee*

---

**OPINION**

Presiding Judge Jennifer B. Campbell delivered the opinion of the Court, in Judge Maurice Portley[1] joined. Judge Samuel A. Thumma concurred in part and dissented in part.

---

**C A M P B E L L**, Judge:

¶1 Two Arizona nonprofit corporations and three Arizona residents (collectively, Appellants) appeal from the superior court's order dismissing their complaint against the Arizona State Legislature (the Legislature). Contrary to the superior court's ruling, we conclude that the political-question component of the separation of powers doctrine does not preclude judicial review of Appellants' claim that certain members of the Legislature violated Arizona's open meeting law (Open Meeting Law), A.R.S. §§ 38-431 to -431.09. Accordingly, we vacate the judgment in favor of the Legislature and remand for further proceedings consistent with this opinion.

**BACKGROUND**

¶2 Anticipating that 26 members of the Legislature (collectively, the legislators) would attend a private three-day conference (the Summit) hosted by the American Legislative Exchange Council (ALEC), at which they would collaborate with corporate lobbyists and lawmakers from other states to draft "model bills," Appellants filed a complaint seeking declaratory and injunctive relief. Appellants alleged that the 26 members who planned to attend the Summit constituted quorums of certain Arizona legislative committees and asked the superior court to: (1) declare the legislators' participation in the Summit a violation of the Open Meeting Law; (2) order that all model bills drafted during the Summit and submitted to the Legislature "be subject to the requirements" of the Open Meeting Law; (3) find that all materials documenting the information presented at the Summit constitute public records subject to Arizona's public records laws, A.R.S. §§ 39-101 to -161; and (4) enjoin members constituting any

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

quorum of an Arizona legislative committee from attending any future ALEC Summit or other similar bill-drafting events that do not comply with the Open Meeting Law.

**¶3** The Legislature moved to dismiss the complaint, asserting Appellants had failed to serve the proper parties and state a claim for relief. After oral argument, the superior court dismissed the complaint, reasoning it presented a nonjusticiable political question. Appellants timely appealed.

## DISCUSSION

**¶4** We review the dismissal of a complaint de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). We accept as true all well-pled factual allegations and reasonable inferences therefrom, *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008), and will affirm only if, as a matter of law, Appellants "would not be entitled to relief under any interpretation of the facts." *Coleman*, 230 Ariz. at 356, ¶ 8 (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998)).

## I. Political Question Doctrine

**¶5** When a challenge to an executive or legislative action involves a "political question," the judiciary may not adjudicate the matter. *Kromko v. Ariz. Bd. of Regents*, 216 Ariz. 190, 192, ¶ 12 (2007). This principle flows from the separation of powers doctrine, which recognizes the independence of the coordinate branches of government. *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 210-211 (1962)).

**¶6** "Nowhere in the United States is [the separation of powers] more explicitly and firmly expressed than in Arizona." *Mecham v. Gordon*, 156 Ariz. 297, 300 (1988). In fact, the Arizona Constitution expressly states that the executive, legislative, and judicial branches "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3.

**¶7** A determination that an issue presents a nonjusticiable political question is not a determination that a specific governmental action is lawful. *Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485, ¶ 7 (2006). While a determination on the merits necessarily requires "the *exercise* of judicial review," a dismissal predicated on the political question doctrine reflects "the *abstention* from judicial review.'" *Id.* (quoting *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 458 (1992)).

**¶8**        Deciding whether a matter has been entrusted by the constitution to a particular branch of government requires constitutional interpretation, a task assigned to the judiciary. *Baker*, 369 U.S. at 211. We review constitutional issues, and the interpretation of statutes, de novo. *Fragoso v. Fell*, 210 Ariz. 427, 430, 432, ¶¶ 7, 13 (App. 2005).

**¶9**        A controversy involves a political question when "there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Fogliano v. Brain ex rel. Cnty. of Maricopa*, 229 Ariz. 12, 20, ¶ 23 (App. 2011) (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993); *Forty-Seventh Legislature*, 213 Ariz. at 485, ¶ 7 (citing *Baker*, 369 U.S. at 217). When presented with a political question, the judiciary must decline review to avoid encroaching on the constitutional powers of a coordinate political branch of government. *See Brewer v. Burns*, 222 Ariz. 234, 238, ¶ 16 (2009).

**¶10**        Here, the Legislature contends that whether a quorum of a legislative committee may meet outside the view of the public is just such a political question. In analyzing that contention, we first consider the relevant constitutional provisions governing the Legislature. Under Article 4, Part 2, Section 8, of the Arizona Constitution, each house of the Legislature "shall" organize itself and "determine its own rules of procedure." A related provision establishes that "[t]he majority of the members of each house shall constitute a quorum to do business, but a smaller number may meet . . . in such manner and under such penalties as each house may prescribe." Ariz. Const. art. 4, pt. 2, § 9.

**¶11**        Together, these constitutional provisions commit to the houses of the Legislature the power to promulgate and apply their own procedural rules. Importantly, neither provision contains any language limiting the Legislature's authority to self-govern.

**¶12**        Our determination that the Arizona Constitution assigns the Legislature the power to create its own procedural rules does not, however, end our inquiry. *Cf. Fogliano*, 229 Ariz. at 20, ¶ 24. "The 'second critical prong of the political question test: whether there exist judicially discoverable and manageable standards,' overlaps with and informs the first prong." *Id.* (quoting *Kromko*, 216 Ariz. at 193, ¶ 14).

**¶13**        Without question, no constitutional provision sets forth a standard for evaluating the adequacy or propriety of the rules of procedure either house has adopted. But Appellants' claims do not require the court

4

to assess whether the Legislature acted reasonably in exercising its constitutional prerogative to enact those rules. *See United States v. Ballin*, 144 U.S. 1, 5 (1892) (explaining judicial review of legislative rules of procedure or compliance therewith is limited to whether the "rules ignore constitutional restraints or violate fundamental rights"). Appellants do not allege that the Legislature failed to adopt a necessary procedural rule; nor do they ask the court to impose any such rules on the Legislature. Finally, Appellants do not allege the legislators violated any rule either house has adopted for itself. Instead, Appellants seek only to have the legislators comply with the Open Meeting Law, which the Legislature enacted and to which it expressly subjected itself. A.R.S. § 38-431.01(A) ("All meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings. All legal action of public bodies shall occur during a public meeting."); A.R.S. § 38-431(6) (defining "public body" to include "the legislature" "and all standing . . . committees" of any public body).

¶14        Pointing to the rules of procedure adopted by each house, the Legislature suggests those rules somehow preempt application of the Open Meeting Law to itself. But the Legislature has not cited, and our review of the procedural rules of each house has not revealed, any rule that conflicts with the Open Meeting Law. Indeed, while each house has promulgated a rule prioritizing the application of legislative rules over statutes, neither has enacted a rule exempting itself from the Open Meeting Law.

¶15        At the same time, as noted, the Legislature did not exempt itself when it enacted the Open Meeting Law. *See Fann v. Kemp*, 1 CA-SA 21-0141, 2021 WL 3674157, at *3, ¶ 15 (Ariz. App. Aug. 19, 2021) (mem. decision) (emphasizing that the Legislature "could have completely exempted itself" from statutory requirements but chose not to do so). In fact, rather than exempting itself from the statute and retaining the exclusive authority for procedural self-governance entrusted to it by the Arizona Constitution, the Legislature expressly "chose to include itself [and its committees] within the definition of . . . public bodies subject" to the open-meeting requirements. *Id.* (concluding the Legislature is subject to the public-records statute); A.R.S. § 38-431(6) (including "the legislature" and its committees in the statutory definition of "public body"). By enacting a statute that expressly imposes open-meeting requirements on itself, the Legislature implicitly and *necessarily* acceded to judicial enforcement of those requirements, even while it retained its authority under the Constitution to adopt other procedural rules.

## II.    The Legislature's Other Arguments

**¶16**         Having concluded that judicial review of the Legislature's compliance with the Open Meeting Law is not a political question implicating the separation of powers doctrine, we now consider whether we may nonetheless affirm the superior court's dismissal of the complaint on other grounds. *Chavez v. Brewer*, 222 Ariz. 309, 317, ¶ 21 (App. 2009).

**¶17**         First, the Legislature argues that the complaint is facially deficient because "there is not a congruence of identity" between the allegations and the named defendant. In other words, although the only named defendant is the Legislature, the complaint "contains no factual allegations" that the Legislature, itself, violated the Open Meeting Law. As the superior court noted, however, the statutory definition of public bodies subject to the Open Meeting Law includes the Legislature and its committees, not individual legislators. A.R.S. § 38-431(6). Having enacted that definition, the Legislature cannot reasonably argue that it may not be sued under the Open Meeting Law unless both houses and all their members act in concert to violate the statute. We concur with the superior court that the Legislature is a proper party to this action.

**¶18**         Second, the Legislature argues that even if the legislature that enacted the Open Meeting Law intended to subject all future legislatures to it, "the intent of one iteration" of the legislature may not bind a future one. As support for this argument, the Legislature cites *Higgins' Estate v. Hubbs*, 31 Ariz. 252, 264 (1926), but that case does not stand for the proposition that the current legislature is not subject to statutes enacted by a prior legislature. Rather, in that case, the supreme court held that one legislature may not enact a statute that irrevocably binds successor legislatures—meaning that the current legislature is always free to repeal or modify previously enacted laws. *Id.* at 264 (explaining the legislature "may alter, limit, or repeal, in whole or in part, any statute passed by a preceding one" and any attempt by a legislature to prevent a subsequent legislature from exercising these prerogatives is "of course unconstitutional, illegal, and void"). Applying this principle here, the Open Meeting Law binds the Legislature until it amends or repeals it.

**¶19**         Third, the Legislature asserts that it is wholly exempt from compliance with the Open Meeting Law because that statute expressly permits either house of the legislature to adopt rules exempting it from the statutory requirements and both have done so. This contention is without merit. While A.R.S. § 38-431.08(D) authorizes each house of the legislature to adopt rules exempting it from the notice and agenda requirements of

A.R.S. § 38-431.02, and each house has adopted its own rules concerning notice and agendas, neither house has adopted a rule exempting it from A.R.S. § 38-431.01's open-meeting requirements, which are the subject of Appellants' claims. Because Appellants allege violations of the statutory open-meeting requirements, not violations of the statute's notice or agenda provisions, the Legislature's argument is not persuasive.

¶20　　　　Fourth, the Legislature contends that the 26 legislators who allegedly participated in the Summit are exempt from compliance with statutory open-meeting requirements because each is a member of the same political party and therefore their gathering as a group constituted a "political caucus of the legislature," which is expressly excepted from the Open Meeting Law. *See* A.R.S. § 38-431.08(A)(1) (stating the Open Meeting Law "does not apply to . . . any political caucus of the legislature").

¶21　　　　Neither the definitions of the Open Meeting Law, A.R.S. § 38-431, nor prior case law define the term "political caucus." In the absence of a statutory definition, our construction of the term is guided by the public policy declaration of the Open Meeting Law, which prescribes that "any person or entity charged with interpret[ing]" the Open Meeting Law "shall construe" it "in favor of open and public meetings." A.R.S. § 38-431.09(A). Consistent with this policy statement, Arizona Attorney General Opinion No. I83-128, at 2 (1983) concluded that the enumerated exceptions to the Open Meeting Law "should be construed narrowly." *See Ruiz v. Hull*, 191 Ariz. 441, 449, ¶ 28 (1998) (stating that "reasoned opinion[s] of a state attorney general should be accorded respectful consideration"). We agree.

¶22　　　　As explained in the Attorney General's opinion, "[t]he ordinary meaning of 'political caucus' encompasses, within its terms, a meeting of members of a legislative body who belong to the same political party or faction to determine policy with regard to proposed legislative action." Ariz. Att'y Gen. Op. No. I83-128, at 1. Accordingly, "[t]he scope of permissible political caucus activity is limited to considering party policy, with respect to a particular legislative issue," and "[a] public body may not use the political caucus [exception] as a means of taking legal action in secret." *Id.* at 3.

¶23　　　　Here, the Appellants do not allege that the 26 legislators gathered to discuss Republican party policy solely with one another or solely with other Republicans. Rather, they assert that the legislators met and collaborated in secret with scores of lawmakers from other states and hundreds of "corporate lobbyists" to draft model bills. Accepting these allegations as true, as we must, and consistent with the statute's policy

7

statement, we narrowly construe the term "political caucus" and conclude that, for purposes of the Open Meeting Law, the term does not apply when legislators of one political party gather with lawmakers from other states and corporate lobbyists to draft legislation.

¶24        Finally, the Legislature contends that Appellants failed to state a claim under the Open Meeting Law because they do not allege the legislators took any "legal action" during the closed-door Summit. The Open Meeting Law requires that "[a]ll legal action of public bodies shall occur during a public meeting." A.R.S. § 38-431.01(A).  It defines "legal action" as "a collective decision, commitment or promise made by a public body." A.R.S. § 38-431(3). The cases, however, require us to broadly construe "legal action" to include "deliberations by a majority of a public body" concerning any matter "that foreseeably could come to a vote by that body." *Valencia v. Cota*, 126 Ariz. 555, 556-57 (App. 1980) (quoting Ariz. Att'y Gen. Op. 75-8, at 7 (1975) ("[A]ll discussions, deliberations, considerations or consultations among a majority of the members of a governing body regarding matters which may foreseeably require final action or a final decision of the governing body, constitute 'legal action' and must be conducted in open meeting, unless an executive session is authorized.")).

¶25        As stated, the statute defines "public body" to include the legislature and "all standing, special or advisory committees or subcommittees of" any "public body." A.R.S. § 38-431(6). This definition places committees of the two houses of the Legislature squarely within the statute, and Appellants allege that the 26 participating legislators constituted a quorum, or majority, of five of those committees. As such, the Appellants allege that during closed-door Summit meetings, the legislators "ha[d] the ability to firmly commit to introduce" model bills in one or both houses of the legislature, thereby circumventing the public scrutiny afforded by the Open Meeting Law.

¶26        While the Legislature correctly notes that Appellants failed to identify any specific bill drafted during the private Summit meetings, Appellants identified specific bills they alleged were drafted during prior ALEC meetings and then enacted "verbatim," and alleged it was "reasonably foreseeable" that model bills drafted during the Summit (which was still upcoming when Appellants filed their complaint) would be brought to a vote in the Legislature. Under analogous circumstances, we have held that such allegations were sufficient to support a claim of an Open Meeting Law violation. *Fisher v. Maricopa Cnty. Stadium Dist.*, 185 Ariz. 116, 122 (App. 1995). "While it is true that the burden of proving a

violation of the Open Meeting Law generally rests on the [party] asserting the violation," this is not so when a party alleges a violation arose during a closed-door meeting. *Id.* at 120-21. Under such circumstances, the burden of proof shifts to the public body to establish that it did not violate the Open Meeting Law. *City of Prescott v. Town of Chino Valley*, 166 Ariz. 480, 486 n. 4 (1990). As this court has explained, "[r]equiring a [party] to plead and prove specific facts regarding alleged violations that are taking place in secret is a circular impossibility." *Fisher*, 185 Ariz. at 122. Accordingly, once a party "has filed a complaint alleging facts from which a reasonable inference may be drawn supporting an Open Meeting Law violation, the burden shifts to the defendant to prove that an . . . exemption" permitted the closed-door meeting. *Id.*

¶27　　　　Viewing the complaint in its entirety, we conclude the Appellants alleged sufficient facts from which a reasonable inference could be drawn that the legislators violated the Open Meeting Law. Accordingly, at this stage of the proceedings, the Legislature has failed to demonstrate that the complaint should be dismissed.

## CONCLUSION

¶28　　　　For the foregoing reasons, we vacate the superior court's judgment and remand for proceedings consistent with this opinion.

**T H U M M A**, Judge, concurring in part, dissenting in part:

¶29　　　　There is much value in the Majority's analysis. And I agree with many of the points made by the Majority. On the record presented, however, I view differently the Majority's conclusion based on the Open Meeting Law's exception for "any political caucus of the legislature." For that reason, I dissent.

¶30　　　　Although not technically relevant to considering the grant of a motion to dismiss, this unique case began in an atypical manner. On December 4, 2019, Appellants filed their complaint targeting the ALEC Summit in Scottsdale that began that same day and continued through December 6, 2019. The complaint sought injunctive and declaratory relief, claiming that the Summit violated or would violate the Open Meeting Law.

Appellants, however, did not seek a temporary restraining order or a preliminary injunction preventing participation in the Summit by any individual or any group. In fact, Appellants did not attempt to serve the complaint until late January 2020, weeks after the Summit had ended.

¶31　　The complaint did not directly allege the legislators were attending the Summit. Instead "[b]ased on the conduct of past convenings, and general ALEC practice," the complaint alleges the legislators "will attend the Summit." Although asserting that "agendas are intentionally hidden from the public," it also alleged that the Summit "will convene, in part, to formulate 'model bills' that will be introduced in Arizona and nationwide." "Upon information and belief," the complaint continued, Arizona legislators "will convene at the Summit to discuss, propose, and deliberate on a number of 'model bills.'" The Legislature then sought dismissal of the complaint for failure to state a claim on various grounds discussed by the Majority.

¶32　　The Majority correctly notes that: (1) a Rule 12(b)(6) dismissal may be affirmed on different grounds; (2) the Open Meeting Law "does not apply to . . . any political caucus of the legislature;" and (3) "political caucus" is not a defined term under Arizona law. The Majority also quotes Arizona Attorney General Opinion No. I83-128 (1983) for the proposition that "[t]he ordinary meaning of 'political caucus' encompasses, within its terms, a meeting of members of a legislative body who belong to the same political party or faction to determine policy with regard to proposed legislative action." Opinion I83-128 adds that "implicit" in that definition "is a requirement that the caucus be formed with members from a partisan-elected public body." Op. Ariz. Att'y Gen. I83-128, 1983 WL 42773, at 1. Applying that standard to the unique record here causes me to depart from the Majority.

¶33　　It is undisputed that the 26 legislators named in the complaint "are members of the Republican Party." On appeal, Appellants concede that any meetings by the required number of these individuals at the Summit was a political caucus. In fact, Appellants' opening brief states "[i]t is imperative that the [Open Meeting Law] be enforced against secret caucus meetings such as those that take place at the ALEC Summit." Accordingly, this unique record causes me to conclude that the "political caucus" exception to the Open Meeting Law applies here.

¶34　　As the Majority notes, exceptions to the Open Meeting Law should be narrowly construed and Opinion I83-128 (at *2) called "improper" any attempt to define "political caucus" as allowing "private meetings of any public body." As the parties concede, however, the

Legislature itself has set forth requirements for caucus meetings, requiring (with exceptions not applicable here) that "[a]ll meetings of majority or minority political party caucuses of members of the House [and Senate] shall be open to the public." Rules of the Arizona House of Representatives 54th Legislature 2019-2020 Rule 35 ("Political Party Caucuses"); *accord* Senate Rules Fifty-Fourth Legislature State of Arizona 2019-2020 Rule 31 ("Caucuses"). Appellants do not claim that these Legislative Rules conflict with the Open Meeting Law. And the fact that the Legislature has adopted "open to the public" Legislative Rules for caucuses does not mean that "any political caucus of the legislature" is, somehow, governed by the Open Meeting Law.

¶35 Appellants' allegations may implicate a violation of these Legislative Rules. However, Appellants have not argued, let alone shown, that this court has jurisdiction to address, at least in the first instance, alleged violations of the Rules of the Arizona House or Senate. *See also* Arizona House Rule 1(A) ("A violation of any of the House Rules shall be deemed disorderly behavior," and "[t]he House may punish its members for disorderly behavior.").[2]

¶36 For these reasons, although I concur with much of the Majority, I dissent.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] These Legislative Rules answer the concern that a political caucus cannot be used to take legal action in secret. They also account for Appellants' conflicting arguments (1) that the ALEC Summits are "secret caucus meetings" but (2) that the December 2019 Summit could not involve "a protected internal caucus conversation" because, along with the 26 Arizona legislators, "198 total registered legislators from 35 states across the country" and "554 registered non-legislators" attended the Summit.